# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TIMOTHY D. RICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-3255 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

CHARLES H. EVANS, U. S. Magistrate Judge:

Plaintiff Timothy D. Rick appeals from the Defendant Commissioner of Social Security's denial of his application for disability insurance benefits and supplemental security income (collectively Disability Benefits). 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this United States Magistrate Judge. <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 19)</u>. This Court has jurisdiction to hear this appeal. 42 U.S.C. §§ 405(g), 1383(c). Both parties have filed cross motions

for summary judgment. For the reasons set forth below, the Defendant Commissioner's Motion for Summary Affirmance (d/e 21) is ALLOWED, and the Plaintiff's Motion for Summary Judgment (d/e 11) is DENIED. The decision of the Commissioner is AFFIRMED.

STATEMENT OF FACTS

Rick was born on April 7, 1959. He graduated from high school. He was a construction worker until September 10, 2001. On that day he was hit in the back by a truck traveling approximately 30 miles per hour while he was working at a road construction site. <u>Certified Record of Proceedings before the Social Security Administration (d/e 10) (R.)</u>, at 177. He has not engaged in substantial gainful employment since.

Immediately after the September 10, 2001, accident, Rick was taken to Covenant Medical Center. Rick did not lose consciousness as a result of the accident, but was unable to walk because of severe pain. X-rays showed no fractures, the lumbar area of the spine appeared normal, and the cervical spine showed no dislocations. He was diagnosed with a severe paraspinal musculature spasm, secondary

to the motor vehicle accident.  R. 178, 182, 183.   Rick was released from the hospital the next day.

Thereafter, Rick complained of severe pain in his back, legs and neck.  Beginning in October 2001, he saw James McKechnie, M.D. for his pain symptoms.  He saw Dr. McKechnie six times in 2001, approximately twice a month.  R. 243, 248, 250, 253.   Initially, Rick reported pain in his back and stiffness in his neck.  Rick's x-rays of his cervical and lumbar spine were unremarkable.  An MRI of his back showed a very slight disc bulge, but nothing to suggest disc pathology or nerve root pressure.  Dr. McKechnie found that Rick suffered from a cervical and lumbar strain, multiple contusions and abrasions.  R. 253.  Rick's pain and stiffness symptoms continued.

Dr. McKechnie saw Rick thirteen times in 2002.  R. 227, 230, 233, 236, 239, 243.  Rick also underwent physical therapy in 2002. A second lumbar spine MRI, performed in June 2002, showed a slight central disc protrusion and evidence of nerve root impingement.  R. 233. By this time the pain had spread to Rick's legs.  Rick received lumbar epidural steroid injections for the pain in July and August 2002.  The

injections were ineffective.  R. 230.

Rick underwent EMG and nerve conduction studies in December 2002.  The studies showed no evidence of plexopathy, radiculopathy, or neuropathy.  R. 162-65. Rick's symptoms, however, remained.

Rick also underwent regular physical therapy in 2001 and 2002. R. 188-220.  The notes from the therapists noted some improvement, but also noted that Rick continued to suffer from leg and back pain. R. 189.

Dr. McKechnie saw Rick four times in 2003.  R. 223-24.  His condition remained the same.  In April 2003, Dr. McKechnie restricted Rick from a job requiring heavy lifting or heavy physical labor indefinitely.  R. 224.  In July 2003, Dr. McKechnie restricted Rick to lifting 40 pounds.  Dr. McKechnie continued to see Rick regularly from 2003 through 2006.  Id.  Dr. McKechnie generally found that Rick's condition remained constant.  In October 2005, Dr. McKechnie noted that Rick was having muscle spasms at night that made it difficult to sleep.  R. 267.

In March 2004, Rick filled out two Activities of Daily Living

Questionnaires. Rick stated that he could reach overhead and above his waist, but if the reaching involved holding an object weighing more than 40 pounds, he would have severe pain. R. 127. He also stated that he mowed his yard every three to four weeks. Rick stated that he took 90 minutes to mow his yard; he took a break during the mowing due to back pain. R. 128.

In April 2004, a state agency physician, Stanley Burris, M.D., reviewed Rick's medical records. Dr. Burris opined that Rick could: (1) lift 20 pounds occasionally, and 10 pounds frequently; (2) sit six hours in an eight-hour workday; (3) stand and/or walk about six hours; and (4) occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 256-63. In October 2004, state agency physician Virgilio Pilapil, M.D., affirmed Dr. Burris' assessment. R. 256.

In September 2004, Rick responded to a second Activities of Daily Living Questionnaire. Rick stated in his response, that he could: (1) drive for 90 minutes; (2) sit continuously for one and a half hours before he needed to change positions; (3) reach above his waist or shoulders, but "if the object is 40-50 lbs it causes more

pain"; and (4) mow his yard for 90 minutes on a riding mower, or 45 minutes with a push/self-propelled mower.  Rick also stated that he needed to take two to three breaks a day during daily activities, and needed to lie down three to four hours after his daily activities. R. 103-05.

The Administrative Law Judge (ALJ) conducted an evidentiary hearing on March 7, 2007.  R. 271-300.   At the hearing, Rick testified that he could not usually drive more than 30 minutes at a time.  He said that he could sit for 30 minutes and then stand for about 10 minutes.  He stated that he could rotate between sitting and standing in that manner for about two hours before he would need to lie down.  He said he could walk for about a block. He said that he could lift and carry about 10 pounds about once a day, but not regularly throughout the day.  He also said that walking up and down stairs would be painful. R. 282-84.   Rick stated that his medications for pain and depression made him drowsy and dizzy. R. 281.

Rick testified that he managed his personal hygiene, mowed his

6

yard with a riding mower, occasionally did light loads of laundry, and made his bed. He said that he grocery shopped approximately once every two weeks. He also visited his mom, sisters, and brother approximately once every two weeks; watched about three to four hours of television per day; spent about thirty minutes a day reading a newspaper; and took one to two naps per day. He also testified that he attended his stepson's basketball games. R. 284-88.

The Vocational Expert Bob Hammond then testified. The ALJ asked Hammond what available jobs could be performed by a person with Rick's age, education, and work experience who was limited to sedentary work with a sit/stand option, with occasional postural limitations; and the person also would not be able to follow detailed instructions. Hammond opined that such a person could perform telephone solicitor jobs and maintenance dispatcher work. Hammond further opined that 16,230 telephone solicitor jobs existed in Illinois, and 6,250 maintenance dispatcher jobs existed in Illinois. R. 297-300.

On March 21, 2007, the ALJ issued his opinion. R. 13-18. The ALJ followed the five-step analysis set forth in the Social

Security Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in the regulations (Listings). 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past

8

work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Rick met his burden at Steps 1 and 2 of the Analysis. He was not gainfully employed, and he suffered from severe impairments due to his complex regional pain syndrome and depression secondary to his physical condition. R. 14. The ALJ then determined at Step 3 that Rick's condition did not meet any of the impairments identified in the Listings. R. 14-16.

At Step 4, the ALJ determined that Rick had the RFC to perform sedentary work, with an option to sit or stand as needed, and with only occasional climbing, balancing, stooping, kneeling, crouching, or crawling. R. 16. The ALJ also found that Rick could not follow detailed instructions due to his depression and the side

9

effects of his pain medication. In making this decision, the ALJ found Rick's testimony about the extent to which his pain limited his activity not to be completely credible. R. 15-16. Given Rick's RFC, the ALJ determined that Rick could not perform his prior work as a construction worker. R. 16.

At Step 5, the ALJ determined that the Commissioner met his burden to show that Rick could perform a significant number of jobs in the national economy. The ALJ started with the Social Security Medical-Vocational Guidelines that indicated that a person with the capacity to perform any sedentary work was not disabled. R. 17. 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 1, Rule 201.21. The ALJ then accepted Hammond's opinion that a person with Rick's vocational profile and RFC could perform over 20,000 jobs (as telephone solicitors and dispatchers) that exist in Illinois. R. 17. The ALJ, thus, concluded that Rick was not disabled.

Rick then appealed to the Commissioner's Appeals Council. Rick forwarded to the Council the medical records from David Dunn, M.D., dated April 16, 2007. R. 8-9. Those records were not

before the ALJ, and so, are not relevant to the issues before this Court. See Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993). The records would only be relevant if Rick was requesting a remand for consideration of new evidence. 42 U.S.C. § 405(g) sentence six. Rick has not asked for such a remand and has made no showing that he would be entitled to such a remand. See Sears v. Bowen, 840 F.2d 395, 399 (7th Cir. 1988).

On June 13, 2007, the Appeals Council denied Rick's request for review. R. 3. Rick then filed this action.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all

relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The finding that Rick could perform work at the sedentary exertional level is amply supported by the evidence.  Sedentary work requires the ability to lift 10 pounds occasionally.  20 C.F.R. § 404.1567.  Dr. McKechnie restricted Rick to lifting less than 40 pounds.  The state agency physicians opined that Rick could lift 20 pounds occasionally and 10 pounds frequently.  Rick stated in his Questionnaire answers that he had problems lifting his arms over his shoulder or waist if weights of 40 pounds or more were involved.  At the hearing he said that he could only lift 10 pounds once a day.  All of this evidence supports the finding that Rick could perform sedentary work.

The ALJ's findings regarding Rick's non-exertional limitations are also supported by substantial evidence.  Dr. McKechnie placed no

non-exertional limitations on Rick's ability to work. The state agency physicians opined that Rick could sit six hours in an eight-hour workday; could stand and/or walk about six hours; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. These opinions support the ALJ's conclusions. Rick's testimony contradicted these opinions. Rick stated that he had to lie down after two hours of sitting and standing. The ALJ discounted the credibility of Rick's testimony on these matters. In light of the physicians' conflicting opinions, the Court will not re-weigh the ALJ's credibility determinations. See Edwards v. Sullivan, 985 F.2d 334, 337 (7th Cir. 1993).

Hammond's testimony supports the finding that the Commission met its burden at Step 5. Hammond identified over 20,000 jobs in Illinois that Rick could perform. This is sufficient to show that he could perform a substantial number of jobs available in the national economy.

Rick asks the Court to re-weigh the ALJ's determination of Rick's credibility. That is improper. The ALJ was in the best

position to evaluate Rick's credibility. There is evidence in the record to support the ALJ's conclusions. The Court, therefore, will not revisit this issue. See Edwards, 985 F.2d at 337.

Rick also argues extensively from Dr. Dunn's April 16, 2007, report. As explained above, that report was not presented to the ALJ. The report did not even exist when the ALJ issued his decision on March 21, 2007. The report is irrelevant.

Finally, Rick argues, without authority, that the substantial evidence standard requires reversal unless "greater than fifty-percent evidence" supports the ALJ's decision. Plaintiff's Response to Commissioner's Memorandum in Support of Motion for Summary Judgment (d/e 23), at 2. Rick is incorrect. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). A decision is supported by substantial evidence if a reasonable mind might accept the favorable evidence in the record as adequate to support the ALJ's decision. There is no "greater than fifty-percent evidence" analysis in the substantial evidence

standard of review. In this case, as explained above, substantial evidence exists to support the ALJ's decision.

THEREFORE, the Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 21) is ALLOWED, and the Plaintiff's Motion for Summary Judgment (d/e 11) is DENIED. The decision of the Commissioner is affirmed. Judgment is entered in favor of the Defendant Commissioner and against the Plaintiff Timothy D. Rick. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: December 11, 2008.

    FOR THE COURT:

                                            s/Charles H. Evans
                                            CHARLES H. EVANS
                                    United States Magistrate Judge